IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANELL BEHRENS, individually and on behalf of
all others similarly situated,

                Plaintiff,                OPINION & ORDER

v.

                                          17-cv-101-jdp

LANDMARK CREDIT UNION and DOES 1–100,

                Defendants.

---

    Plaintiff Danell Behrens filed a proposed class action alleging that defendants, Landmark Credit Union and Does 1–100 (collectively "LCU"), charged LCU members overdraft fees in violation of Regulation E of the Electronic Fund Transfer Act (ETFA) and LCU's own overdraft program contract. Now before the court is Behrens's unopposed motion seeking preliminary approval for the parties' proposed class action settlement. Dkt. 29. In her motion, Behrens seeks conditional certification of the class, approval of a proposed notice plan, appointment of a claims administrator, and a hearing date for the final approval of the settlement. The court will conditionally certify the class and preliminarily approve the settlement pending a final fairness hearing.

BACKGROUND

    LCU is a Wisconsin-based credit union. During the six-year period prior to the filing of this suit, Behrens and the proposed class members all had checking accounts with LCU.

    Behrens alleges that LCU wrongfully charged its customers overdraft fees. An overdraft fee is charged to an account when there are not sufficient funds in an account to cover a

transaction. There are two methods to determine if an account has sufficient funds to cover a transaction: (1) the ledger, or actual, balance method and (2) the available balance method. LCU used the available balance method to assess its overdraft fees.

The difference between the two is that the actual balance reflects all of the money in an account, whereas the available balance reflects only the money not subject to a hold due to pending transactions. Thus, the available balance in an account may be less than the actual balance. So by using the available balance method, LCU may assess an overdraft fee even when a customer's actual balance shows enough money to cover a transaction.

Behrens claims that this practice violates the terms of the contracts governing LCU's overdraft program, and that it violates Regulation E of the EFTA, *see* 12 C.F.R. § 1005.17, because LCU failed to properly disclose its overdraft policy to customers.

Behrens brings her claims on behalf of herself and the entire class, which is composed of two subclasses. The first, the "Sufficient Funds" subclass, is tied to the breach of contract claim and is defined as "those members of Defendant who were assessed an Overdraft Fee between February 9, 2011 and February 28, 2017 on any type of payment transaction and at the time such fee was assessed, the member had sufficient money in his or her ledger balance to cover the transaction that resulted in the fee." Dkt. 37, at 6. The second, the "Regulation E" subclass, is tied to the ETFA claim and is defined as "those members of Defendant who were assessed an Overdraft Fee for an ATM or non-recurring debit card payment transaction for the first time between February 9, 2016 and February 28, 2017." Dkt. 37, at 6. *Id.*

The Court has subject matter jurisdiction over Behrens' EFTA claim under 28 U.S.C. § 1331 because it arises under federal law, and the court may assert supplemental jurisdiction

2

over the breach of contract claim under 28 U.S.C. § 1367 because it is part of the same case or controversy.

ANALYSIS

A. **Class Certification**

For settlement purposes only, Behrens moves the court to certify the proposed class. The proposed class consists of "any member of LCU who is in either of the two [sub]classes, the Regulation E Class or the Sufficient Funds Class." Dkt. 37, at 6.

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate.'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001)). Before "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members," the proposed class must satisfy the Rule 23(a) prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The proposed class must also satisfy one subsection of Rule 23(b). Here, Behrens argues that the proposed class satisfies Rule 23(b)(3). Rule 23(b)(3) permits class certification when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." And "[i]f the action proceeds under Rule 23(b)(3), then each member of the class must receive notice and an opportunity to opt out and litigate (or not) on his own behalf." *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 896 (7th Cir. 1999).

When considering whether to preliminarily approve a class action settlement and, in the process, to certify a Rule 23 class, the court must rigorously examine whether the proposed

class satisfies the Rule 23 requirements, to mitigate the lack of an adversarial relationship between the parties and to identify potential conflicts of interest. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). Thus, Behrens must go beyond the pleadings and adduce evidence to satisfy Rule 23. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Because she does so, the court will certify the proposed class.

### 1. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder is impracticable. There is no explicit cut-off, but the Seventh Circuit has deemed classes of 40 members to be sufficient. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Here, Behrens has identified 14,286 LCU members as belonging to the Sufficient Funds subclass and 6,020 LCU members as belonging to the Regulation E class, for a total class membership of 18,062 persons. This number is large enough to make joining all potential class members impracticable. Behrens has satisfied the numerosity requirement.

### 2. Commonality

Under Rule 23(a)(2), a class action must involve "questions of law or fact common to the class" or, more accurately, common answers to those questions. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). Put differently, a class satisfies the commonality requirement when "determining the truth or falsity of [a] common contention will resolve an issue that is central to the validity of each claim." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ.*, 797 F.3d 426, 434 (7th Cir. 2015).

Here, Behrens has identified several questions common to the class, all of which would share common answers: (1) whether LCU uniformly and systematically used the available balance method instead of the actual balance method to assess an overdraft fee on a

transaction; (2) whether the operative terms in the overdraft fee program contract, including the method of balance calculation to be used in the assessment of overdraft fees, were provided to all class members; and (3) whether the terms of the overdraft fee program contract mandated the use of the actual balance in the assessment of overdraft fees.

The determination of these issues, regardless of outcome, will resolve the allegations of the entire class. Behrens satisfies Rule 23(a)(2)'s commonality requirement.

### 3. Typicality

Under Rule 23(a)(3), a class representative's claims must have "the same essential characteristics" as the class members' claims. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Behrens seeks appointment as the class representative, contending that her claims are based on the same questions of law and fact as the rest of the class. Behrens is a member of the proposed class, she entered into LCU's standardized overdraft program contract, and she was assessed an overdraft fee when the actual balance in her account was sufficient to cover a transaction. Behrens satisfies the typicality requirement.

### 4. Adequacy of representation

The question of adequate representation involves two inquiries: (1) whether the class representative's interests are aligned with those of the class; and (2) whether class counsel is capable of litigating the case. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). As a member of the class, Behrens has no apparent conflicts with the rest of the class; her interest in resolving the matter is the same as the class's interest. Behrens's declaration makes it clear that she understands she is pursuing this case on behalf of all class members and that she understands she has a duty to protect the interests of all class members. *See* Dkt. 34,

¶ 2. Further, she has actively participated in the litigation by frequently conferring with class counsel, reviewing the complaint, and sitting for a deposition. The settlement agreement provides that Behrens may request a $10,000 service payment for her efforts. But this added incentive does not prevent Behrens from representing the class, and the requirement that the court approve the amount of the payment ensures that Behrens will not deprive the other class members of a fair recovery for their claims. Behrens is an adequate representative.

Behrens's counsel, Richard McCune of McCune Wright Arevalo, LLP, and Taras Kick of the Kick Law Firm, APC, seek appointment as class counsel. The court must consider the work that counsel has done to identify or investigate the claims, counsel's experience in similar cases, counsel's knowledge of wage and hour law, and the resources that counsel will commit to the representation. Fed. R. Civ. P. 23(g)(1)(A). McCune and Kick have represented Behrens since she initiated the case. They have investigated the claims, engaged in fairly extensive discovery, prepared for and attended mediation, and negotiated the proposed settlement agreement. Both also have significant class action, litigation, and trial experience, with particular expertise in overdraft fee litigation. The court is satisfied that they will adequately represent the class. Thus, the court will appoint McCune and Kick to serve as class counsel. Behrens satisfies the adequacy of representation requirement.

5. **Rule 23(b)(3)**

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To determine whether common questions predominate, the court considers (1) the class members' interests in individually controlling their own claims; (2) the nature and extent of any other

litigation about the controversy; (3) the desirability of concentrating the litigation here; and (4) any management challenges that the case may present. *Id.*

First, although class members have an interest in controlling their own claims, they also have an interest in the efficient resolution of their claims, which the class action and proposed settlement provide. Individually litigating each class member's claims would be expensive and time consuming. Second, there is no indication that any of the class members are pursuing other litigation related to the claims at issue in this case. Third, consolidating the common issues into one case and resolving them is efficient. Fourth, the case presents no management difficulties because the parties have settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . .").

The goal is to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment). Because consolidating the class members' claims into a class action will accomplish that goal, a class action is the best way to proceed in this case. The court will certify the proposed class for settlement purposes.

**B. Preliminary approval of settlement**

Now that the class is certified, the court considers whether to approve the class action settlement. Behrens summarizes the relevant settlement terms in her brief:

- LCU will pay $950,000 into a settlement fund;

- LCU will change its overdraft assessment policy so that it charges overdraft fees using the available balance method. This will save class members an estimated $385,000 per year;

- LCU will waive $88,082 in assessed, but uncollected, overdraft fees;

- A claims administrator will administer the disbursement of the settlement fund in accordance with the process outlined in detail in the settlement agreement;

- No class member shall be eligible to recover more than the amount actually charged as an overdraft fee;

- Any residual funds shall not revert to LCU. Instead, they will be allocated to a cy pres recipient;

- A service payment of $10,000 may be requested by the Named Plaintiff, Danell Behrens;

- Any class member will be given an opportunity to opt out by mailing an exclusion letter by the Bar Date;

- Plaintiff's counsel will petition the court for attorney's fees and costs from the settlement fund.

Dkt. 37, at 6–10. The settlement agreement provides a straight-forward method of calculating each class member's claim, and prevents class members from receiving a double recovery for claims that would be eligible in both classes by capping recovery at 70 percent of the charged overdraft fee. This cap, in conjunction with a 10-claim limit for members of the Regulation E subclass, is designed to prevent the claims of the Regulation E subclass members from overwhelming the claims of the Sufficient Funds subclass. Finally, the agreement lays out the process for notifying the class, getting final approval of the settlement, and administering it.

8

At this point, the parties seek only preliminary approval of the settlement agreement. After preliminary approval, the parties will send notice to the class, provide an opportunity for objections, and attend a final fairness hearing to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To preliminarily approve the settlement, the court considers the strength of Behrens's case compared to the settlement amount; the complexity, length, and expense of the litigation; any opposition to settlement; the opinion of competent counsel; and the stage of the proceedings (including the amount of discovery completed) at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Class actions tend to give counsel on both sides an incentive to collude in settlement at the expense of class members. *Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289, 293–94 (7th Cir. 2010) (per curiam). Accordingly, the court examines the proposed settlement with a critical eye.

1. **The strength of Behrens's case on the merits balanced against the amount offered in the settlement**

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). Behrens's counsel analyzed LCU's accounting data and determined that the total amount of improperly assessed overdraft fees was $2,101,565. *See* Dkt. 37, at 5.

For approval purposes, the settlement amount is $1,038,082, which represents 49.3 percent of the full value of the asserted claims. This amount includes the $950,000 settlement fund and $88,082 in waived overdraft fees. However, it does not include the prospective value of the change in LCU's overdraft fee assessment practice, as this value represents the

9

anticipated savings for all future LCU members; it does not take into account what percentage of the proposed class remains LCU members and would therefore receive a direct benefit from the change in practice. *See* Dkt. 32, ¶ 11.

A class recovery of 49.3 percent of total damages is more than a modest discount, but it is still within the range of reasonableness. And courts have approved settlement funds representing less than 20 percent of the potential recovery. *See Kaufman v. Am. Express Travel Related Servs., Co.*, 877 F.3d 276, 282, 284–86 (7th Cir. 2017).

Furthermore, litigation always presents a real risk for the class. Here, class counsel has indicated that in cases involving similar claims they have faced successful statute of limitations defenses, and so settlement insures payment against the risk that the class may not recover the full value of their total damages. Finally, the settlement agreement was proposed by an experienced third-party mediator after the parties' engaged in adversarial, arm's length negotiations. This favors approval of the settlement. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014).

In sum, the balance favors approving the settlement.

### 2.  Complexity, length, and expense of litigation

The potential complexity, length, and expense of litigating this case through trial weigh in favor of settlement. Although litigating Behrens's claims would not be unusually complex, prompt settlement benefits all parties by avoiding long, drawn-out litigation. It gives the class members a meaningful amount of compensation and it spares LCU the cost of continuing to pay its attorneys through trial.

### 3. Opposition

The proposed settlement agreement provides for class member objections to the settlement and outlines stringent requirements for objecting. Dkt. 30-1, at 12. It also warns that failure to object by the deadline or to abide by the requirements waives objection. *Id.* At this point, court consideration of this factor is premature because the members have not yet had the chance to voice their opposition.

### 4. Opinion of counsel

In deciding whether to approve the settlement, the court is "entitled to give consideration to the opinion of competent counsel." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Class counsel supports the settlement. Counsel also has experience in litigating similar cases to settlement and represents that the settlement agreement is the result of arm's length negotiations presided over by an experienced third-party mediator. For the purpose of preliminarily approving the settlement, the court accepts counsel's opinion in favor of approval.

### 5. Amount of discovery and stage in the proceedings

Behrens filed her initial complaint on February 9, 2017. Dkt. 1. Since then, counsel has engaged in fairly extensive discovery, hired an expert to review the discovery, conducted depositions, and performed successful negotiations. On January 22, 2018, Behrens filed her unopposed motion for settlement. Dkt. 29. This progress represents significant time and resources and indicates that the parties have considered the merits and risks of litigating compared to settling. Accordingly, this factor weighs in favor of approval.

## C. Attorney fees and costs

The settlement agreement provides that class counsel will seek attorney fees and costs, to be paid from the settlement fund. Class counsel states that they will seek 25 percent of the

"value of the settlement." Dkt. 37, at 9. This equals $355,770.50, which is 37.4 percent of the settlement fund.

To determine whether the requested fees are reasonable, the court "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). The aim is to "base the award on relevant market rates and the *ex ante* risk of nonpayment." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011). This court typically measures the reasonableness of attorney fees based on the percentage they represent of a settlement fund. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund."). And generally, a 33 to 40 percent contingency fee is considered consistent with the market rate and reasonable. *See Black v. Renaissance Learning, Inc.*, No. 15-cv-635, 2016 WL 9460662, at *6 (W.D. Wis. Nov. 10, 2016).

Here, class counsel contends that their anticipated fee is reasonable, based on the relatively low percentage it represents of the value of the settlement. But counsel sets the value of the settlement at $1,423,082 by calculating the combined value of: (1) the settlement fund ($950,000); (2) one year of prospective customer savings from LCU's change in overdraft fee assessment practice ($385,000); and (3) the amount of waived overdraft fees ($88,082). Dkt. 30-1, at 8. This may not be an appropriate measure of the settlement value. Nevertheless, the court will provisionally approve the proposed fee request, given that the parties have agreed to it as part of their settlement. But the court will defer a final determination of what constitutes a reasonable amount of attorney fees until the final fairness hearing. Counsel should expect to justify the reasonableness of their proposed fee in their forthcoming petition, including

information that would allow the court to calculate the lodestar as a cross-check on the reasonableness of the fees. *See Williams v. Rohm and Haas Pension Plan,* 658 F.3d 629, 636 (7th Cir. 2011).

**D. Class notice and settlement administration**

Behrens also moves the court to approve a proposed notice, *see* Dkt. 30-1, at 18, and to appoint Garden City Group, LLC, as the claims administrator. Dkt. 29 and Dkt. 39. As proposed claims administrator, Garden City, LLC, will be responsible for distributing the notice to all class members in accordance with the settlement agreement's notice plan, for reviewing and filing responses from class members, and for administering the settlement allocations.

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances." It must plainly state the nature of the action, the definition of the certified class, the issues, the option for members to appear through an attorney, the option to be excluded from the class, and the binding effect of judgment on participating class members.

The proposed notice describes the case and overdraft fees assessment practice in plain language. In addition to providing general language, the notice is particularized in that it provides class members with the information about their settlement payments. It also describes the options open to class members: how to object and how to opt-out of the settlement. Finally, the notice warns class members that by failing to opt-out, they will be giving up their rights to bring their own claims against LCU.

The court does note one small error in the notice, as it consistently and incorrectly lists the zip code of the court as "53707." S*ee* Dkt. 30-1, at 21–23. The correct zip code for the court is 53703. Thus, contingent upon this correction being made, the court will approve the proposed notice and notice plan and appoint Garden City Group, LLC, as claims administrator.

ORDER

IT IS ORDERED that:

1. Plaintiff's unopposed motion for preliminary approval of class action settlement, Dkt. 29, is GRANTED.

2. Plaintiff's unopposed motion for approval of claims administrator, Dkt. 39, is GRANTED.

3. Danell Behrens is appointed class representative.

4. Richard McCune of McCune Wright Arevalo, LLP, and Taras Kick of the Kick Law Firm, APC, are appointed class counsel.

5. Garden City Group, LLC, is appointed as claims administrator.

6. The notice attached to the settlement agreement as "Exhibit 1," *see* Dkt. 30-1, at 18, is approved. Per the settlement agreement, Garden City Group, LLC, will send the notice to the class within 20 days of the date of this order.

7. Class counsel will file a petition for approval of attorney fees and costs no later than August 9, 2018.

8. Class counsel will file any supplemental brief in support of final approval of the settlement agreement or in response to any objections to the petition for attorney fees and costs no later than August 23, 2018.

9. The telephonic final fairness hearing is scheduled for August 30, 2018 at 9:00 a.m. Counsel for plaintiff is responsible for initiating the conference call.

Entered June 26, 2018.

> BY THE COURT:
>
> /s/
> _____
> JAMES D. PETERSON
> District Judge